UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Kimberly Andersen

   v.                                    Civil No. 13-cv-477-JD
                                         Opinion No. 2015 DNH 037
Dartmouth Hitchcock
Medical Center

O R D E R

Kimberly Andersen brings federal and state law claims against Dartmouth Hitchcock Medical Center ("DHMC"), her former employer, that arose from the circumstances of her employment termination.[1]  Andersen is deaf and contends that DHMC did not provide her with reasonable accommodation for her disability during the termination process.  Andersen moves for summary judgment on her claims under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the New Hampshire Law Against Discrimination, RSA chapter 354-A, which are Counts I, II, and V.  DHMC moves for summary judgment in its favor on all of Andersen's claims.

Standard of Review

Cross motions for summary judgment proceed under the same standard applicable to all motions for summary judgment, but the motions are addressed separately.  Fadili v. Deutsche Bank Nat'l

---

[1] DHMC represents that Andersen was employed by Mary Hitchcock Memorial Hospital, not DHMC, but acknowledges that DHMC may be used to refer to its related entities, including Mary Hitchcock Memorial Hospital.

Tr. Co., 772 F.3d 951, 953 (1st Cir. 2014).  When the party moving for summary judgment bears the burden of proof on an issue, that party "cannot prevail unless the evidence that he provides on that issue is conclusive."  E.E.O.C. v. Union Indep. de la Autoridad de Acueductos y Alcantarillados de P.R., 279 F.3d 49, 55 (1st Cir. 2002) (internal quotation marks omitted).  In addition, Federal Rule of Civil Procedure 56 requires that a motion for summary judgment be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Therefore, an absence of evidence weighs against the party with the burden of proof.  Sanchez-Rodriguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 14 (1st Cir. 2012).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine issue is one that can be resolved in favor of either party, and a material fact is one which has the potential of affecting the outcome of the case."  Jakobiec v. Merrill Lynch Life Ins. Co., 711 F.3d 217, 223 (1st Cir. 2013) (internal quotation marks omitted).  In deciding a motion for summary judgment, the court draws all reasonable factual inferences in favor of the nonmovant.  Kenney v. Floyd, 700 F.3d 604, 608 (1st Cir. 2012).

I.  Statement of Facts

In its reply, DHMC challenges statements in Andersen's objection to DHMC's motion for summary judgment as not being supported by appropriate record citations. The cited statements are part of the "Argument" section of Andersen's objection and do not have supporting citations to the record.

Litigants in this district are required to "incorporate a short and concise statement of material facts, supported by appropriate record citations" to support or oppose a motion for summary judgment. LR 56.1(a) & (b). "All properly supported material facts set forth in the moving party's factual statement may be deemed admitted unless properly opposed by the adverse party." LR 56.1(b). Further, a party opposing summary judgment must provide competent record evidence to show a genuine factual dispute. Fed. R. Civ. P. 56(c)(1); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Mosher v. Nelson, 589 F.3d 488, 492 (1st Cir. 2009).

Andersen did not provide a statement of material facts in her objection as is required by LR 56.1(b). Instead, Andersen stated in her objection: "Ms. Andersen incorporates by this reference the motion with memorandum of law and exhibits she has submitted, asking the Court to grant partial Summary Judgment in her favor." For its part, DHMC filed a statement of undisputed material facts in a separate document, which is an exhibit attached to its memorandum.

Neither of these practices appear to strictly comply with LR 56.1(a), and both could lead to unnecessary confusion. See, e.g., P.R. Am. Ins. Co. v. Rivera-Vazquez, 603 F.3d 125, 131-32 (1st Cir. 2010). In addition, the Local Rules impose a page limitation on memoranda, see LR 7.1(a)(3), and both practices could be used to circumvent that rule. For purposes of the pending motions only, the court will consider the factual statement in Andersen's motion for partial summary judgment as a factual statement in support of her objection and will consider DHMC's factual statement that was filed as an exhibit to DHMC's motion for summary judgment. Similar accommodations may not be granted in the future in this or other cases. Counsel are directed to read and follow the local rules of this district.

Andersen did not support, by record citation, the following challenged statements in her objection to DHMC's motion for summary judgment or in her memorandum for partial summary judgment:

1. "Kimberley Andersen worked successfully in the billing department at Dartmouth, receiving regular raises, and commendations for her performance."

2. "Not surprisingly, Ms. Andersen received the lowest possible scores for communication skills and interpersonal skills during that meeting."

3. "And when the attempt to obtain an interpreter for the scheduled termination meeting failed, Ms. Andersen's supervisor, [sic] misled Ms. Andersen about the nature of the meeting,

4

allowing Ms. Andersen to believe that the meeting was to identify which of the positions in the newly reorganized department she would have."

Therefore, those statements will not be considered for purposes of summary judgment.

II. Factual Background

Andersen graduated from the National Institute for the Deaf at Rochester Institute of Technology in May of 1985 with an "AAS" medical record technician degree. The Institute provided an evaluation of her communication skills and stated that Andersen's recommended mode of communication with Andersen in a one-to-one situation was through speech. The evaluation also stated that Anderson had good speech abilities, that her speech reading abilities were excellent particularly one-to-one, that she understood more than half of a message by hearing, and that appropriate environmental conditions such as proper lighting and no excessive background noise would help her understanding.

Andersen was hired by Mary Hitchcock Memorial Hospital, after graduation, as a clinical information analyst. She used speech and lipreading as her primary modes of communication but later also relied on email, which helped her ability to communicate. On some occasions, beginning in the 1990s, Andersen requested an American Sign Language interpreter, which was provided when requested. Her managers would ask if she wanted an interpreter for meetings or events.

Andersen worked in clinical information services as an inpatient coder until 1995. Because she could not meet the accuracy requirements for that position, Andersen was transferred to a temporary position in the Patient Financial Services department to provide her time to find another job. She performed well in that position and stayed in that department, which was renamed the Revenue Management Division.

In 2011, Andersen's performance evaluation noted that she was not following directions given by the manager and that her responses bordered on insubordination. She was given a low rating as a result. Andersen signed the evaluation.

The Revenue Management Division began a reorganization process for a reduction in force in early 2012. During the reorganization process, DHMC terminated the employment of all employees in the Revenue Management Division and then offered those employees the opportunity to apply and be interviewed for positions in the reorganized department.

Andersen did not understand why she was being asked to apply for a new position but submitted applications for her current position, Special Representative II, and for two other positions, Special Representative III and Team Leader. Andersen was interviewed by a management group, which included Sheila Locke, the billing operations manager in the Revenue Management Division, on February 21, 2012. Andersen was offered an interpreter for the interview meeting, but she declined when

Locke, her supervisor, said she would be at the interview.[2] Andersen's evaluations from the interview noted specific deficiencies in skills related to positions in the department and showed low scores. The interview group concluded that Andersen would not be offered a position in the reorganized department.

A follow up meeting was scheduled for March 6, 2012, to inform Andersen that she would not be hired back in the reorganized department and to give her the DHMC severance package. Locke attempted to find an interpreter for the meeting, but no interpreter was available. Locke then asked Andersen if she wanted to have an interpreter present for the meeting, and Andersen declined to have an interpreter.[3]

Locke attended the meeting along with Barbara Moore, director of billing operations, and Kimberly Carboneau, an employee relations specialist in the human resources department. Locke stated in her deposition that at the beginning of the meeting she told Andersen that she would not be offered a position in the reorganized department and that Carboneau would explain what opportunities and options Andersen would have. Andersen remembers that at the beginning of the meeting Locke put her hand out and said: "Give me your badge." Andersen was

---

[2] In her factual statement in support of her motion for summary judgment, Andersen appears to confuse the circumstances of the offer of an interpreter for the interview on February 21 with the offer of an interpreter for the March 6 meeting.

[3] Andersen contends that she did not understand the importance of the meeting.

flabbergasted and felt that the wind had been knocked out of her. Andersen does not remember that Carboneau explained the severance package to her, and instead remembers that Locke told her not to show the severance agreement to a lawyer. Andersen took the severance package, including the severance agreement, told the group that she would show it to her lawyer, and left the meeting.

Andersen read the severance agreement at home and then reviewed it with her brother, who is a financial advisor with offices in New York and Boston. Her brother explained each paragraph to Andersen so that she understood the agreement. Based on her review with her brother, Andersen signed the agreement on March 17, 2012, and returned it to DHMC.

The severance package began with a sheet titled "Important Information and Resources" that listed the documents provided in the package. A letter to Andersen was the first page of the severance agreement and notified her that her employment was terminated effective on March 6, 2012, and that the severance agreement provided the terms under which DHMC would provide severance pay and benefits. The letter stated that Andersen would have twelve weeks of severance pay, health insurance through COBRA, and outplacement services provided by Lee Hecht Harrison. The letter further explained that Andersen had forty-five days to decide whether to sign the agreement and directed Andersen to sign the agreement and initial each page if she agreed to the terms and conditions offered.

In the first numbered paragraph, the agreement explains the severance pay offered, that DHMC would subsidize one month of health benefits under COBRA, and that outplacement services would be provided by Lee Hecht Harrison.  The second paragraph is titled "Release" and states that "[i]n return for the severance pay and benefits described above, you agree to release [DHMC], and its parents, subsidiaries, divisions, affiliates, successors, and assigns, and current and former officers, directors, employees, and agents (in this paragraph collectively referred to as the 'released parties') from any and all liability or claims, of any nature."  The released claims include claims arising "under any federal, state or local human rights, civil rights, employment, wage-hour, pension or labor laws, rules and/or regulations, public policy, contract or tort laws, or any claim for misrepresentation, defamation, promissory estoppel, or invasion of privacy, or otherwise."

In the confidentiality provision, the agreement states that a terminated employee was not precluded from discussing the agreement with a spouse, lawyer, accountant, or financial advisor.  At the end of the agreement, the signing party "represent[s] that (a) [she has] had sufficient time to consider [her] options regarding this Agreement; (b) [she has] had an opportunity to consult with an attorney of [her] choice; (c) [she has] been provided with accurate and complete information regarding [her] obligations and the benefits that are available to [her] under the terms of this Agreement; (d) [she has] not

9

been subjected to any threats, intimidation or coercion in connection with the Agreement; and (e) the terms of this Agreement have been written in a manner [she] understand[s]." Andersen signed the agreement and received all of the benefits to which she was entitled under the agreement.

After the termination of her employment, Andersen applied for other positions at DHMC, but she was not hired. Andersen attended a training session provided by Lee Hecht Harrison on March 30, 2012. The trainer at the session was Irene Sinteff, who had not been told that Andersen was deaf. Andersen did not request an interpreter for the session. Because Andersen was the only one who attended the session, Sinteff was able to provide one-on-one training. Sinteff noted that Andersen would have been lost in a larger class.

### III.  Andersen's Motion for Summary Judgment

Andersen moves for summary judgment on her claims that DHMC violated Title I of the ADA, the Rehabilitation Act, and the New Hampshire Law Against Discrimination, RSA 354-A, by failing to provide an interpreter for her at meetings that occurred during the reorganization and termination process. DHMC objects, contending that Andersen's motion fails to provide the grounds for summary judgment with reasonable clarity and asserting that DHMC provided interpreter services when requested, Andersen signed a release of most of the claims, Andersen cannot show any harm caused by a lack of an interpreter at the termination

meeting, and DHMC was not obligated to provide an interpreter for the placement services provided after her termination.

### A. Sufficiency of the Motion

DHMC challenges Andersen's motion as insufficient because it does not provide the grounds she asserts for summary judgment with reasonable clarity. The court agrees. The motion itself states only that Andersen seeks summary judgment on Counts I, II, and V "for the reasons detailed in the accompanying memorandum of law." The accompanying memorandum provides a factual statement, a three-paragraph law section, and two paragraphs of argument to support the motion. The first paragraph of argument merely repeats facts that Andersen contends are undisputed. The second paragraph is a general statement of the purpose of the ADA, taken from a Sixth Circuit case, without any attempt to analogize that case or any legal theory to the facts of this case.

In her reply, Andersen provides some argument that DHMC should have provided an interpreter for the March 6, 2012, termination meeting and that Andersen's deafness was a substantial factor in her lack of success in applying for jobs at DHMC after her termination. A party generally cannot raise or develop arguments for the first time in a reply. Mills v. U.S. Bank, NA, 753 F.3d 47, 55 n.5 (1st Cir. 2014); Alamo-Hornedo v. Puig, 745 F.3d 578, 582 (1st Cir. 2014); West v. Bell Helicopter Textron, Inc., 2014 WL 4922971, at *13, n.13 (D.N.H. Sept. 30, 2014); Gen. Linen Serv., Inc. v. Gen. Linen Serv. Co., Inc., 25

F. Supp. 3d 187, 192 (D.N.H. 2014).  In addition, even with the reply, Andersen's motion is not sufficient to support summary judgment in her favor.

   B.   Merits of the Motion

   Further, DHMC has demonstrated that material facts exist which do not support judgment in Andersen's favor.  Without addressing all of the reasons DHMC raises in its objection to Andersen's motion, the following circumstances preclude summary judgment in Andersen's favor.

   DHMC contends that under the terms of the severance agreement, Andersen released her claims in Count I, Count II, and Count V to the extent those claims are based on events that occurred prior to March 17, 2012.  Andersen did not address the release or its effect on her claims.  Therefore, she is not entitled to summary judgment on Counts I, II, and V.

   In addition, to the extent Andersen intended to allege claims in Counts I, II, and V based on events after March 17, she has not provided evidence or argument to support those claims for purposes of her motion for partial summary judgment.  DHMC asserts and provides evidence to show that its decisions not to hire Andersen for positions after her termination were based on legitimate and non-discriminatory reasons, which leaves Andersen with the burden of showing those reasons were pretext for discrimination.  See Cruz v. Bristol-Myers Squibb Co., PR, Inc., 699 F.3d 563, 571 (1st Cir. 2012); Rios-Jimenez v. Principi, 520

F.3d 31, 40-41 (1st Cir. 2008); Madeja v. MPB Corp., 149 N.H. 371, 378 (2003).

If Andersen claims that DHMC violated the ADA because Lee Hecht Harrison failed to provide an interpreter for the training session she attended, she has not supported that claim. DHMC points out that after March 6, Andersen was no longer an employee of DHMC, and argues that Title I of the ADA applies only to job applicants and current employees. See Hatch v. Pitney Bowes, Inc., 485 F. Supp. 2d 22, 28 (D.R.I. 2008). Further, as Andersen acknowledges, Lee Hecht Harrison is an independent contractor, and Andersen has not shown that DHMC would be liable under the ADA for Lee Hecht Harrison's actions.

Therefore, Andersen has not shown that she is entitled to summary judgment on Counts I, II, and V.

IV.  DHMC's Motion for Summary Judgment

DHMC moves for summary judgment on all of Andersen's claims on the grounds that Andersen lacks evidence of discrimination, that the release in the severance agreement precludes all of her claims which are based on events before March 17, 2012, and that she received all of the benefits she was entitled to under the severance agreement. In response, Andersen asserts that DHMC did not make reasonable efforts to communicate with her during the reorganization process, did not know what she understood during

13

the meetings related to her termination, and did not inform Lee Hecht Harrison that Andersen was deaf.

### A. Release

As is discussed above in the context of Andersen's motion for partial summary judgment, the severance agreement that Andersen signed includes a release provision. In support of summary judgment, DHMC asserts that Andersen has released it from all claims to the extent they are based on events that occurred prior to the date she signed the severance agreement, March 17, 2012. Andersen did not address or even mention the release provision in her objection to summary judgment.

The release provides that Andersen "agree[s] to release [DHMC] . . . from any and all liability or claims, of any nature." Andersen does not dispute that by signing the severance agreement she agreed to release all claims against DHMC as stated in the release provision. She also does not challenge the validity of the severance agreement or the release provision. Therefore, based on the release, DHMC is entitled to summary judgment on all of Andersen's claims to the extent they are based on events that occurred before the severance agreement was signed on March 17, 2012.

### B. Discrimination Claims - Counts I, II, and V

DHMC contends that Andersen cannot prove that DHMC discriminated against her, for purposes of Counts I, II, and V,

based on events that occurred after March 17, 2012. Andersen did not respond to DHMC's argument or evidence.

Discrimination claims under Title I of the ADA, the Rehabilitation Act, and RSA 354-A are evaluated under the same standard. Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 103, n.12 (1st Cir. 2007); Parker v. Accellent, Inc., 2014 WL 6071550, at *6 (D.N.H. Nov. 3, 2014); Montemerlo v. Goffstown Sch. Dist., SAU No. 19, 2013 WL 5504141, at *5 (D.N.H. Oct. 4, 2013). To prove discrimination for Counts I, II, and V, Andersen would have to show that she was disabled within the meaning of the ADA, that she was able to perform the essential functions of her job with or without accommodation, and that she was adversely affected by DHMC's actions because of her disability. Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 34 (1st Cir. 2009). When, as here, the plaintiff lacks direct evidence of discrimination, she may prove her claim by first making a prima facie showing of the elements of the claim, which shifts the burden to the defendant "to articulate a legitimate, non-discriminatory reason for its action." Ramos-Echevarria v. Pichis, Inc., 659 F.3d 182, 186-87 (1st Cir. 2011). If the defendant provides legitimate, nondiscriminatory reasons, the burden moves back to the plaintiff to show that the reasons given are merely a pretext for discriminatory animus. Id.

1. <u>Post-termination applications.</u>

Andersen applied for seven positions at DHMC after her termination. She applied for each position through an electronic application system, and her applications were considered by recruiters in Recruitment Services at DHMC. The application system did not reveal her deafness. She was not interviewed for any of the positions.

Suzanne M. Blish, the Manager of Recruitment Services at DHMC, explained as to each position why Andersen was not interviewed for the positions. Blish stated that other applicants were more qualified for the receptionist position, Andersen lacked the necessary qualifications for the provider auditor position, her prior performance evaluations precluded the clinical secretary position, others were more qualified and Andersen lacked the coding background for the human resources service center representative position, her prior performance evaluations precluded the regulatory auditor position, the coding advisor position was eliminated, and Andersen was not a registered nurse as was required to be a clinical documentation specialist. The reasons given are legitimate and nondiscriminatory, and Andersen has not shown that those reasons were pretextual.

2. <u>Outplacement services with Lee Hecht Harrison.</u>

Andersen contends that the training session she attended was useless because she did not have an interpreter. She faults DHMC

16

for failing to provide an interpreter for that session and contends that DHMC discriminated against her on that basis.

As DHMC points out and Andersen does not dispute, Andersen was no longer a DHMC employee when she attended the training session. Andersen does not provide any theory through which DHMC would violate the ADA, the Rehabilitation Act, or RSA 354-A by failing to provide an interpreter for a non-employee in post-termination training. In addition, Lee Hecht Harrison was an independent contractor, not a part of DHMC, and did not know that Andersen was deaf. Andersen does not explain why DHMC would have a duty to provide an interpreter for services through an independent contractor or would be required, under the cited statutes, to inform Lee Hecht Harrison that Andersen was deaf. Andersen did not notify Lee Hecht Harrison that she was deaf. Further, in an email she sent to Irene Sinteff at Lee Hecht Harrison immediately following the training, Andersen thanked Sinteff for her efforts and said that the meeting was very informative and very good.

Andersen has not shown that she has any evidence to prove her claims in Counts I, II, and V based on her post termination applications or outplacement services. Therefore, DHMC is entitled to summary judgment on Counts I, II, and V.

C. <u>State Law Contract and Tort Claims</u>

In addition to the discrimination claims in Counts I, II, and V, Andersen brings state law claims for intentional

infliction of emotional distress, negligence, and breach of contract (Count III), interference with economic advantage (Count IV), respondeat superior (Count VI), and enhanced compensatory damages (Count VII).  DHMC moves for summary judgment on these claims as barred by the release.  Andersen did not respond to summary judgment on the state law claims in her objection to summary judgment.

The claims in Counts III, IV, VI, and VII are, for the most part, generic restatements of Andersen's discrimination claims and are barred by the release.  In support of her breach of contract claim in Count III, Andersen alleged that DHMC breached the severance agreement by not providing an interpreter for her training session with Lee Hecht Harrison.  DHMC contends that it agreed to provide outplacement services but did not provide any warranty about the nature or quality of the services.  Andersen does not point to any provision in the severance agreement that would obligate DHMC to provide an interpreter for her training session.  Further, as is noted above, although Andersen now denigrates the value of the one-on-one training she received, at the time she indicated that it was very informative.

DHMC is entitled to summary judgment on all of Andersen's claims.

## Conclusion

For the foregoing reasons, the plaintiff's motion for partial summary judgment (document no. 15) is denied.  The

18

defendant's motion for summary judgment (document no. 16) is granted.

The defendant's motion to challenge expert qualification (document no. 25) is terminated as moot.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

February 26, 2015

cc: Katherine DeForest, Esq.
    Edward M. Kaplan, Esq.
    Kirk C. Simoneau, Esq.
    David P. Slawsky, ESq.